# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| DAVID SHROPSHIRE, ) | |
| ) | Case Nos. 1:02-cr-72; 1:16-cv-476 |
| *Petitioner*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner's successive motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 202.)[1] Petitioner bases his request for relief on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague. (*Id.*) The United States responded in opposition (Doc. 204); Petitioner replied in turn (Doc. 207). Recently, Petitioner field an "expedited motion" for a hearing on the merits (Doc. 208); the United States again responded in opposition (Doc. 209). For the reasons that follow, the § 2255 petition will be **GRANTED**. The request for an expedited hearing will be **DENIED as moot**.

---

[1] On February 11, 2016, this Court appointed Federal Defender Services of Eastern Tennessee ("FDSET") for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET obtained authorization and then submitted the instant successive § 2255 petition. (Docs. 198, 202.)

I.   **BACKGROUND**

In 2002, Petitioner pled guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g), and committing a Hobbs Act robbery, in violation of 18 U.S.C. § 1951. (Doc. 149.) Based on four prior Tennessee felony convictions—a 1974 first-degree murder conviction, a 2000 aggravated assault conviction, a 2000 reckless driving conviction, and a 2000 attempted carjacking conviction—the United States Probation Office deemed Petitioner to be an armed career criminal subject to the ACCA's fifteen-year term of imprisonment. (Presentence Investigation Report (PSR) ¶¶ 36, 41, 48, 50–51, 74.) In accordance with that designation, this Court sentenced Petitioner to 211 months' imprisonment. (Docs. 96, 106.) Petitioner appealed, but the Sixth Circuit affirmed his conviction and sentence on May 19, 2008. (Doc. 149.) He did not seek a writ of certiorari.

On October 31, 2008, Petitioner filed a § 2255 motion seeking to vacate, set aside, or correct his sentence. (Docs. 151, 152.) This Court denied that petition on the merits in a Memorandum Opinion and Judgment Order entered on September 13, 2011. (Docs. 175, 176.) The Supreme Court issued the *Johnson* decision on June 26, 2015. The Sixth Circuit authorized this Court to consider the instant successive petition on November 28, 2016. (Docs. 198, 202.)

II.  **STANDARD OF REVIEW**

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly

higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III. ANALYSIS

The petition contains a single ground for collateral relief, arguing that the *Johnson* decision removed aggravated assault, reckless driving, and attempted carjacking from the definition of "violent felony" in § 924(e) and that, without those convictions, Petitioner no longer qualifies for ACCA enhancement. (Doc. 202 (challenging the status of Petitioner's attempted carjacking and reckless driving offenses); Doc. 203 (challenging the status of his aggravated assault offense).)

### A. Propriety of ACCA Designation After the *Johnson* Decision

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. §

924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in the *Johnson* decision. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015). Nor does *Johnson* disrupt the use of prior serious drug offenses as an independent form of ACCA predicate conviction. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

Petitioner does not dispute that his 1974 conviction for first-degree murder remains a violent felony under the use-of-physical-force clause, and the United States agrees that his 2000 conviction for reckless driving only qualified as a predicate offense under the now-defunct residual provision. (Doc. 204, at 3 (stipulating that "[P]etitioner's reckless driving conviction, which was initially classified as a violent felony, no longer constitutes a violent felony post-*Johnson*").) As such, the continued validity of Petitioner's categorization as an armed career criminal depends on whether his 2000 convictions for attempted carjacking and aggravated assault remain "violent felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where convictions qualified as a predicates independent of the residual clause), *overruled on other grounds by Mathis v. United States*, 136 S. Ct. 2246, 2251 n.1 (2016). Because the Court finds that his attempted carjacking offense does not, it declines to address the status of Petitioner's aggravated assault offense.

At the time Petitioner attempted the carjacking, Tennessee defined the offense as follows:

(a) "Carjacking" is the intentional or knowing taking of a motor vehicle from the possession of another by use of:

(1) A deadly weapon; or

(2) Force or intimidation.

Tenn. Code Ann. § 39-13-404 (2000). Because carjacking is not listed as an enumerated offense in § 924(e)(2)(B)(ii), its status as an ACCA predicate depends on the use-of-physical-force clause.

To determine whether Petitioner's conviction for attempted carjacking remains a violent felony under the use-of-physical-force clause, the Court needs to identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). To do so, it must employ a "categorical approach," under which it looks "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If the statute categorically aligns with the generic version of the offense, the inquiry is over. If, however, the statute criminalizes conduct in excess of that covered by the enumerated-offense clause, it becomes necessary to determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple crimes, or alternative sets of elements. *Id.* at 2281. An indivisible statute is one that contains a single crime, or a lone set of indivisible elements. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). When faced with a divisible statute, the Court resorts to the "modified categorical approach," *i.e.*, consults "a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* at 2281. "[T]he job . . . of the modified approach [is only] to identify,

from among several alternatives, the crime of conviction so that the court can" determine whether that variant of the offense qualifies as a violent felony under the ACCA's definition of violent felony. *Id.* at 2285. Because the categorical and modified approaches are concerned with elements and not "facts underlying [any particular] conviction," *id.* at 2285, the Court is prohibited from using either approach to distinguish between alternative means for satisfying a single indivisible element. *Mathis*, 136 S. Ct. at 2253–54. As such, it is important to distinguish between divisible provisions to which the Court can apply the modified approach and indivisible provisions to which it cannot. Convictions under an overly broad indivisible provision are incapable of serving as a predicates.[2]

For reasons that the Court will explain in more detail below, it finds that Tennessee Code Annotated § 39-13-404 (2000) is overly broad because some conduct covered by the criminal statute does not necessarily require the use of violent physical force. As such, this Court's ability to determine whether Petitioner's variant of the offense remains a predicate conviction under the ACCA depends on whether or not the criminal provision is divisible, *i.e.*, subject to the modified categorical approach.

When determining whether the a criminal provision contains alternative elements for commission of multiple divisible crimes or alternative means of satisfying a single indivisible

---

[2] In *Mathis v. United States*, the Supreme Court held that: (1) a prior conviction does not qualify as a generic form of a predicate violent felony for purposes of the ACCA if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former; and (2) Iowa's burglary statute—which defines "structure" to include any building, structure, [or] land, water, or air vehicle"—had a broader locational component than generic burglary. 136 S. Ct. 2247–48, 53–54. Because the "structure" element of Iowa's burglary statute was broader than the parallel element of generic burglary, the Court concluded that the petitioner's prior convictions were incapable of supporting enhancement under the enumerated-offense clause. *Id.* at 2257.

6

crime, binding authority tells the Court to consider: (1) the text of the statute; (2) any state court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction," i.e., charging documents and jury instructions, for the "limited purpose" of distinguishing between means and elements. *Mathis*, 136 S. Ct. at 2256–57. With regard to the third factor, the Supreme Court provided the following example:

> Suppose, for example, that one count of an indictment and correlative jury instructions . . . use a single umbrella term like "premises" . . . the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.

*Id.* at 2257. Applying the above analysis to Tennessee Code Annotated § 39-13-404(a) (2000) leads the Court to conclude that the statute is divisible into two distinct criminal offenses: (1) armed carjacking and (2) carjacking by way of force or intimidation.[3]

The first indicator of divisibility is the statutory text itself, *i.e.*, the fact that the criminal provision lists the methods of committing carjacking in the disjunctive. The Supreme Court made clear in the *Descamps* decision that the legislative use of "or" to separate clauses within a provision is a strong indicator that each clause represents an alternative element for which satisfaction equates to an independent criminal offense. *See* 133 S. Ct. at 2281 (explaining locations listed in the disjunctive, i.e., separated by "or," are typically indicative of a divisible provision). Another indicator of divisibility is the fact that the Tennessee Supreme Court described the elements of carjacking as the intentional or knowing taking of a motor vehicle

---

[3] To the extent that one might argue carjacking is divisible into three offenses—(1) armed, (2) by force, and (3) by intimidation—the Court is unaware of any authority which it might conclude that juries in Tennessee are required to distinguish between carjackings committed by way of force and carjackings committed by way of intimidation or coercion.

7

from the possession of another "by use of *either* (1) a deadly weapon or (2) force and intimidation." *State v. Wilson*, 211 S.E.3d 714, 719 (Tenn. 2007) (quoting Tennessee Code Annotated § 39-13-404(a) (1997)). A third and final indicator of divisibility is the fact that the Tennessee pattern jury instructions divide the offense into two versions—"Part A" corresponding to carjacking with a deadly weapon and "Part B" corresponding to carjacking by "force or intimidation." (Doc. 202-1.)

Having determined that Tennessee's carjacking statute is overly broad and divisible, the next step under the modified categorical approach is to examine permissible *Shepard* documents to determine which variant of that criminal provision supported the conviction at issue. While Petitioner's indictment lists alternative charges of carjacking "by the use of a deadly weapon or by force or intimidation" and judgment identifies the offense as "attempted carjacking" (Doc. 202-2, at 2, 3), his jury instruction clearly demonstrates that the jury returned a conviction for carjacking by force or intimidation (Doc. 201-1). Thus, entitlement to relief hinges on whether carjacking by force or intimidation invariably requires the use, attempted use, or threatened use of physical force.

For purposes of § 924(e)(2)(B)(i), "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010). Any level of force is sufficient so long as it is capable of causing any injury, "regardless of [the injury's] gravity or duration." *United States v. Evans*, 699 F.3d 858, 863 (6th Cir. 2012). The Court must look to the "minimum conduct criminalized" to determine whether Tennessee carjacking by force or intimidation categorically involves force sufficient to satisfy the use-of-physical-force clause. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

While the statute in effect at the time of Petitioner's conviction did not include a definition for "intimidation," the applicable pattern jury instructions and actual instruction provided to the jury in Petitioner's case defined the term as "unlawful coercion, duress; putting in fear." (Doc. 203, at 4 (actual jury instruction).) The pattern instructions went on to define "coercion" as a threat, however communicated, to: "(A) commit any offense; (B) wrongfully accuse any person of any offense; (C) expose any person to hatred, contempt or ridicule; (D) harm the credit or business repute of any person; or (E) take or withhold action as a public servant or cause a public servant to take or withhold action." 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 9.04 (2000 ed.). Because all five of the foregoing methods of coercion are capable of commission without the use, attempted use, or threatened use of force capable of causing physical pain or injury, the Court cannot hold that Tennessee carjacking by force or intimidation—which by definition includes carjacking by coercion—categorically qualifies as a violent felony under the use-of-physical-force clause.

The United States attempts to avoid the above conclusion by providing the Court with citations to several cases in which other courts—including the Sixth Circuit—have held that robbery or carjacking by way of "fear" or "intimidation" invariably involve the use, attempted use, or threatened use of violent physical force. (Doc. 204, at 4–8.) However, noticeably absent from that argument is any indication that the terms at issue in the cited cases share a definition with the term at issue in the instant case. *See In re Smith*, 829 F.3d 1276, 1280 (11th Cir. 2016) (examining statute, 18 U.S.C. § 2119, with federal definition of "intimidation"); *United States v. Jones*, 642 F. App'x 304, 305 (5th Cir. 2016) (same); *United States v. McBride*, 826 F.3d 293, 295–96 (6th Cir. 2016) (same); *United States v. Mitchell*, 743 F.3d 1054, 1058–60 (6th Cir. 2014) (examining Tennessee statute which did not criminalize "coercion" as defined in

9

Tennessee Pattern Jury Instruction 9.04 (2000 ed.)); *United States v. Brown*, 437 F.3d 450, 452 (5th Cir. 2006) (examining Louisiana statute with differing definition of "intimidation"); *United States v. Lewis*, 405 F.3d 511, 514 (7th Cir. 2005) (examining Indiana statute criminalizing the use of "fear," not "intimidation"); *United States v. Presley*, 52 F.3d 64, 69 (6th Cir. 1995) (examining Virginia statute with different definition of "intimidation"); *United States v. Wilson*, 951 F.2d 586, 588 (4th Cir. 1991) (examining Maryland statute criminalizing the use of "fear," not "intimidation").

In other words, the cases cited by the United States are inapposite to the issue at hand—whether the "minimum conduct" capable of supporting Petitioner's conviction for carjacking by force or intimidation necessarily involved the use, attempted use, or threatened use of violent force. Because the Court finds that it did not, Petitioner's attempted carjacking conviction cannot operate as a predicate for his designation as an armed career criminal and his 211-month sentence and five-year term of supervised release exceed the maximum authorized sentence for a non-ACCA offender by 91 months' incarceration and two years' supervised release. *See* 18 U.S.C. § 924(a)(1)(D)(2) ("Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be . . . imprisoned not more than 10 years.").[4] He has demonstrated a clear entitlement to relief.

Where a § 2255 claim has merit, district courts have the discretion to choose between discharging the petitioner, resentencing the petitioner, correcting the petitioner's sentence, or granting the petitioner a new trial. 28 U.S.C. § 2255(b). Absent ACCA designation, Petitioner would have received a total offense level of twenty-nine and a criminal history category of VI,

---

[4] Because Petitioner lacks sufficient predicates for enhancement under the ACCA regardless of the result, this Court declines to address the status of his 2000 conviction for aggravated assault.

resulting in an advisory Guideline range of 151 to 188 months' imprisonment and effective range of 120 months' imprisonment after application of the ten-year maximum under § 924(a). (PSR ¶¶ 36, 55.)[5]  Because Petitioner has already served in excess of that range, the Court finds correction of sentence to be the most appropriate form of relief.  *See United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("[I]n cases were the sentence (but not the conviction) is infirm, only the 'resentenc[ing]' or 'correct[ing] the sentence' options are open to the district court, since a prisoner should never be 'discharge[d]' or 'grant[ed] a new trial' based solely on a defective sentence.").

## IV.     REQUEST FOR AN EXPEDITED HEARING

In light of this Court's resolution of the underlying § 2255 petition, Petitioner's request for an expedited hearing on the same (Doc. 208) will be **DENIED as moot**.

## V.     CONCLUSION

Petitioner has already served 170 months in prison.  (Doc. 202 (noting that Petitioner had been in prison for 166 months on November 28, 2016), Doc. 208, at 2 (suggesting that, with good time credit, Petitioner has accumulated 200 months of credit toward completion of his sentence), a total exceeding the ten-year custodial maximum applicable to him after the *Johnson* decision.  For this reason, Petitioner successive § 2255 motion (Doc. 202) will be **GRANTED**.  His sentence will be reduced to "time served."  The accompanying Order will take effect ten days from its entry in order to give the Bureau of Prisons time to process release.  Further,

---

[5] As a career offender, Petitioner would receive a base offense level of thirty-two based on the twenty-year maximum associated with his conviction under 18 U.S.C. § 1951.  A three-level reduction for acceptance of responsibility would result in a total offense level of twenty-nine.

11

Petitioner's judgment will be **AMENDED** to reflect a three-year term of supervised release.[6]

The Clerk's Office will be **DIRECTED** to prepare an amended judgment in accordance herewith. Petitioner's request for an expedited hearing on the § 2255 petition (Doc. 208) will be **DENIED as moot**.

      **AN APPROPRIATE ORDER WILL ENTER.**

                                              **/s/ *Travis R. McDonough***
                                              **TRAVIS R. MCDONOUGH**
                                              **UNITED STATES DISTRICT JUDGE**

---

[6] Included in Petitioner's motion for expedited hearing is a request that the Court reduce his term of supervision beyond the two-year reduction required to comply with § 924(a) because "he has earned enough time to account not only for a 120-month sentence of incarceration, but also for his [five] years supervised release." (Doc. 208, at 2.) The Court declines. Supervised release serves an important role toward the reintegration of individuals into society while simultaneously protecting the same from potential recidivism. While the Court acknowledges that Petitioner spent more time in prison as a result of the fact that the *Johnson* decision came so late in his sentence, that fact is neither unique to this case nor a justification to dispense with post-conviction supervision.